

U.S. Department of Justice

United States Attorney
Eastern District of New York

NEM:LDS/DJM

271 Cadman Plaza East
Brooklyn, New York 11201

February 26, 2024

By Email and ECF

The Honorable Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Sai Keung Tin, a/k/a "Ricky Tin"
Magistrate Docket No. 24-171

Dear Judge Pollak:

The government respectfully submits this letter in support of its motion for a permanent order of detention for defendant Sai Keung Tin, also known as "Ricky Tin" (the "defendant" or "Tin"), who presents a serious risk of flight. See 18 U.S.C. § 3142(f)(2). Tin is a citizen of the People's Republic of China. On February 25, 2024, Tin was charged by complaint in the Central District of California with a violation of Smuggling Goods from the United States (18 U.S.C. § 554) for his role in a wildlife trafficking ring.

Tin was arrested yesterday after arriving at John F. Kennedy International Airport ("JFK Airport") and will make his first appearance this afternoon before Your Honor. Given that Tin is a Chinese citizen, lacks any personal and family ties in the United States, his use of multiple phones, his business connections to a wildlife smuggling ring overseas, the strength of the government's case, and the serious penalties he faces if convicted, there is no condition or combination of conditions that can reasonably secure his appearance in Court. He should therefore be detained.

I. Background

Tin is a citizen of the People's Republic of China who resides at Room 705, No-7, San Lau Street, Cheong Shing Court, Hung Hom, Hong Kong (the "Target Address"). Tin was identified as the target of a U.S. Fish and Wildlife Service ("USFWS") investigation because his address was used to illegally ship a high volume of packages containing CITES -protected turtles.[1]

---

[1] The Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES") is an international treaty to which the United States, China, and approximately

In 2017, USFWS conducted an investigation into Kang Juntao, a Chinese citizen located in Hangzhou City, China, who recruited turtle poachers and suppliers in the United States to ship turtles domestically to middlemen. The middlemen bundled the turtles into other packages and exported them to Hong Kong. The turtles were bound in socks to protect their shells and to ensure they could not move and alert authorities. Between June 2017 and December 2018, Kang smuggled at least 1,500 turtles from the United States with a market value of over $2.25 million in the illegal pet trade. Following his extradition from Malaysia in 2019, Kang pleaded guilty to a federal money laundering charge in the District of New Jersey.

As relevant here, Kang instructed the middlemen to ship the packages to the Target Address in Hong Kong, where it was easier to smuggle the turtles into mainland China. The packages were addressed to Sai Keung Tin, SK Tin, Ricky Tin, or "Ji Yearlong" and "Lam Yuk Ki," names believed to have been used by Tin as aliases to evade law enforcement detection of the packages. In 2017, approximately 27 packages containing turtles were smuggled through the international mail facility ("IMF") at JFK Airport to the Target Address. And in 2018, approximately 46 shipments containing turtles were smuggled through the JFK Airport IMF to the Target Address.

Since Kang's arrest and prosecution, packages have continued to be sent to the Target Address. For example, on June 27, 2023, wildlife inspectors at the IMF in Torrance, California, intercepted four packages addressed to Ji Yearlong at the Target Address. The first three packages contained 12, eight, and 12 live eastern box turtles, respectively. The fourth package contained seven live and one deceased eastern box turtles. The turtles were all bound in socks and the packages were falsely labeled as containing almonds or chocolate cookies. A search of property records also indicated that the names listed as the sender from the origin address were fictitious.

A review of postal records from June 2021 to June 2023 indicated that approximately 45 other packages were shipped to the Target Address through the IMF in Torrance. About 30 of those packages listed the defendant as the recipient, as Sai Keung Tin, SK Tin, or Ricky Tin. The other recipient names included Ji Yearlong, Lam Yuk Ki, or Yan Ji.

In addition to the smuggling count charged in the complaint, Tin is being investigated for additional felony charges related to his wildlife trafficking, such as Lacey Act trafficking and false labeling provisions (16 U.S.C. §§ 3372, 3373). Though the Government is not aware of any criminal history at this time, Tin still faces a substantial, multi-year sentence, if convicted. Given the significant value of the wildlife trafficked, valued at almost a million dollars when accounting for his relevant conduct going back to at least 2017, Tin's sentencing guidelines offense level, and the amount of time he could serve if given a sentence within the guidelines, could be at least 41-51 months' imprisonment.

Tin continues to reside in the People's Republic of China, a country with which the United States does not have an extradition treaty. When interviewed by USFWS agents upon his

---

181 nations are signatories and governs the trade of species which are or may become extinct if their trade is not regulated.

arrival at JFK Airport on February 25, 2024, he admitted that the Target Address is his current residence, and that he and his wife are the only people who live there. Tin stated that the purpose of his travel to the United States was for tourism. When asked what his plans were while in the country, he stated that he planned to spend two days in New York City and then travel to Texas or California. However, Tin did not have any flight or hotel reservations for either destination. He further told agents that he has no friends or family in the United States.

Tin also had two cell phones in his possession when entering the country at JFK Airport. He claimed he did not know the phone number for one of the phones, having just bought it from a Hong Kong secondhand market. Yet his wife and a caller with a California area code dialed that phone number while he was detained at customs.

II.     Legal Standard

   A.     The Bail Reform Act

The Bail Reform Act of 1984, codified at 18 U.S.C. §§ 3141–3156, provides that, in general, a court "shall order" a defendant's pretrial release unless the court determines that the defendant presents an unreasonable risk of flight or "will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). The government must ultimately persuade the court by a preponderance of the evidence that the defendant is a flight risk or by clear and convincing evidence that the defendant is a danger to the community. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release and (4) the weight of the evidence against the defendant. See 18 U.S.C. § 3142(g).

Where the evidence of guilt is strong, it provides "a considerable incentive to flee." United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased").

   B.     Proceeding by Proffer

Evidentiary rules do not apply at detention hearings and the Government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffer. LaFontaine, 210 F.3d at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted).

3

III.   The Defendant Should Be Detained Pending Trial

Tin should be detained pending trial because he poses an irremediable risk of flight. He does not have any personal or family ties to the United States and has no residence here. On the contrary, Tin is a Chinese citizen who maintains a Chinese passport and who resides in China. He therefore could not be extradited to the U.S. if he were able to return. Tin thus has the means and motive to disappear and escape answering for his crimes. The use of fictitious names is common among wildlife traffickers, and Tin has previously communicated with others about methods used to evade customs and law enforcement detection when engaging in smuggling activity. As mentioned above, he also uses multiple mobile phones, one of which contained indicia of illegal wildlife activity, including hundreds of photographs of turtles. When asked about the pictures of turtles observed on this phone, Tin implausibly explained that he had purchased the phone last week and did not know what was on it, nor did he know the phone number. However, the pictures were saved under a Google account associated with the email address "RickyMartinMartin19@gmail.com," which Tin told law enforcement officers he created a few days prior to traveling to the United States.

Moreover, since his wife resides in China, Tin has every incentive to return to her and avoid punishment. See United States v. Liebowitz, 669 F. A'ppx 603, 605 (2d Cir. 2016) ("the lengthy jail sentence that could be imposed for the charged crimes provides an incentive to flee [and] the likelihood of flight is reinforced in this case by that fact that Liebowitz holds Australian as well as United States citizenship and has family members in Australia"); United States v. Baig, 536 F. App'x 91, 93 (2d Cir. 2013) (affirming detention order in part because the defendant "though a permanent resident of the United States, is a citizen of Pakistan and maintains ties there"); Mercedes, 254 F.3d at 438 (ordering pretrial detention and reversing the district court's grant of release where the defendant was a legal permanent resident of the United States (not a citizen), faced a substantial sentence, and evidence linked him to a violent robbery); United States v. El-Hage, 213 F.3d 74, 80 (2d Cir. 2000) (noting that a defendant's "history of travel and residence in other countries" is a factor that has been long-approved by the Second Circuit in determining whether a defendant should be detained).

Tin's incentive to flee is particularly acute given the substantial sentence he could face if convicted. The high value of the wildlife trafficked over the course of Tin's participation in the smuggling ring exposes him to a significant sentence under the guidelines of at least 41-51 months' imprisonment. See United States v. Blanco, 570 F. App'x 76, 77 (2d Cir. 2014) (affirming district court's order of detention where defendants face lengthy term of imprisonment). In addition, the evidence against Tin is strong, given the discovery of evidence of turtle trafficking on his phone and the volume of packages shipped to his residence over the course of many years. See United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993) (holding that, where the evidence of guilt is strong, it provides "a considerable additional incentive to flee").

In light of the fact that Tin is a Chinese citizen, lacks any personal and family ties in the United States, has business connections to a wildlife smuggling ring overseas, the strength of the government's case, and the serious penalties he faces if convicted, Tin presents a risk of flight that no combination of conditions can mitigate.

4

IV.     Conclusion

For the reasons set forth above, the Government respectfully submits that no condition or combination of conditions will assure Tin's return to court. He should be detained pending his removal to the Central District of California.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/ Daniel J. Marcus
        Daniel J. Marcus
        Assistant U.S. Attorney
        (718) 254-6280

cc:     Clerk of Court (CLP) (by ECF)
        Defense Counsel (by email)