# U.S. District Court
# Eastern District of New York (Brooklyn)
# CRIMINAL DOCKET FOR CASE #: <u>1:24–mj–00171–CLP</u> All Defendants

Case title: USA v. Tin

Date Filed: 02/26/2024

Date Terminated: 02/26/2024

Assigned to: Magistrate Judge Cheryl L. Pollak

**<u>Defendant (1)</u>**

**Sai Keung Tin**
*TERMINATED: 02/26/2024*

represented by **Mia Eisner–Grynberg**
Federal Defenders of New York
One Pierrepont Plaza
16th Floor
Brooklyn, NY 11201
718–330–1257
Fax: 718–855–0760
Email: <u>mia_eisner–grynberg@fd.org</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or
Community Defender Appointment*

**<u>Pending Counts</u>**

**<u>Disposition</u>**

None

**<u>Highest Offense Level (Opening)</u>**

None

**<u>Terminated Counts</u>**

**<u>Disposition</u>**

None

**<u>Highest Offense Level (Terminated)</u>**

None

**<u>Complaints</u>**

**<u>Disposition</u>**

None

**<u>Plaintiff</u>**

**USA**　　　　　　　　　　　　represented by　**Daniel J. Marcus**
DOJ–USAO
Eastern District of New York
271–A Cadman Plaza East
Brooklyn, NY 11201
718–254–6280
Email: Daniel.Marcus2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/26/2024 | 1 | RULE 40 AFFIDAVIT / removal complaint to the Central District of California by USA as to Sai Keung Tin. Signed by Judge Cheryl Pollak dtd 2/26/24. (SY) (Entered: 02/26/2024) |
| 02/26/2024 | 2 | Letter dtd 2/26/2024 from AUSA Daniel Marcus to Judge Cheryl Pollak opposing bail as to defendant Sai Keung Tin. (SY) (Entered: 02/26/2024) |
| 02/26/2024 | | Minute Entry for proceedings held before Magistrate Judge Cheryl L. Pollak : Initial Appearance in Rule 5(c)(3) Proceedings as to Sai Keung Tin held on 2/26/2024, Attorney Appointment of federal defender Mia Eisner Grynberg for the defendant present. AUSA Daniel Marcus. Cantonese int. Way Moy present.(FTR Log #2;27–2;40.) Defense counsel request for ROR release with conditions. Gov't opposed bail for reasons stated on the record. Court denied bail. Commitment to Central District of California entered. Defendant waived identity hearing. (SY) (Entered: 02/26/2024) |
| 02/26/2024 | 3 | COMMITMENT TO ANOTHER DISTRICT as to Sai Keung Tin. Defendant committed to District of Central District of California.. Ordered by Magistrate Judge Cheryl L. Pollak on 2/26/2024. (SY) (Entered: 02/26/2024) |
| 02/26/2024 | 4 | WAIVER of Rule 5(c)(3) Hearing by Sai Keung Tin (SY) (Entered: 02/26/2024) |
| 02/26/2024 | 5 | CJA 23 Financial Affidavit by Sai Keung Tin (SY) (Entered: 02/26/2024) |

NEM:DJM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

        - against -

SAI KEUNG TIN,
        also known as "SK TIN,"
        "RICKY TIN,"
        "JI YEARLONG," and
        "LAM YUK KI,"

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

REMOVAL TO THE
CENTRAL DISTRICT OF
CALIFORNIA

(Fed. R. Crim. P. 5)

Case No. 24-MJ-171

EASTERN DISTRICT OF NEW YORK, SS:

        Ryan Bessey, being duly sworn, deposes and states that he is a Special Agent with the United State Fish and Wildlife Service ("USFWS"), duly appointed according to law and acting as such.

        On or about February 25, 2024, the United States District Court for the Central District of California issued a warrant for the arrest of the defendant SAI KEUNG TIN, also known as "SK Tin," "Ricky Tin," "Ji Yearlong," and "Lam Yuk Ki" for violating Title 18, United States Code, Section 554 (causing the smuggling of goods from the United States).

        The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1]     Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

1.      On or about February 25, 2024, a criminal complaint was signed by United States Magistrate Judge Karen Stevenson in the Central District of California (the "Complaint") charging the defendant SAI KEUNG TIN with violating Title 18, United States Code, Section 554 (causing the smuggling of goods from the United States).   A true and correct copy of the Complaint is attached as Exhibit A.

2.      In connection with the Complaint, on or about February 25, 2024, the United States District Court for the Central District of California issued a warrant (the "Warrant") for the arrest of the defendant SAI KEUNG TIN.   A true and correct copy of the Warrant is attached as Exhibit B.

3.      On or about February 25, 2024, SAI KEUNG TIN traveled to John F. Kennedy International Airport ("JFK") in Queens, New York from Hong Kong and was arrested by the USFWS at secondary border screening area pursuant to the Warrant.

4.      At the time of his arrest on February 25, 2024, SAI KEUNG TIN acknowledged his full name to the USFWS, which matched the name listed on the arrest warrant. SAI KEUNG TIN's passport contained the same name and date of birth of those of the SAI KEUNG TIN wanted in the Central District of California.   Law enforcement agents also compared the physical appearance of SAI KEUNG TIN to a photograph of SAI KEUNG TIN in the file prepared by law enforcement agents that depicts the person who is wanted in the Central District of California and observed that SAI KEUNG TIN appeared to be the same person depicted in this photograph.

5.      Based on the foregoing, I submit that there is probable cause to believe that the defendant is the SAI KEUNG TIN wanted in the Central District of California.

WHEREFORE, your deponent respectfully requests that the defendant SAI KEUNG

TIN be removed to the Central District of California so that he may be dealt with according to law.


S/ Ryan Bessey
_____
Ryan Bessey
Special Agent
United State Fish and Wildlife Service

Sworn to before me this
26th day of February, 2024

S/ Cheryl Pollak

_____
THE HONORABLE CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

# EXHIBIT A

# UNITED STATES DISTRICT COURT

for the

Central District of California

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| SAI KEUNG TIN, | ) | |
| also known as "SK Tin," also known as "Ricky Tin," | ) | |
| also known as "Ji  Yearlong,"  also known as "Lam | ) | |
| Yuk Ki," | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ June 27, 2023 _____ in the county of _____ Los Angeles _____ in the

_____ Central _____ District of _____ California _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 554 | Causing the Smuggling of Goods From the United States |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
/s/ Ryan Bessey
*Complainant's signature*

Ryan Bessey, Special Agent, U.S. Fish & Wildlife
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 02/25/2024 _____

_____
*Judge's signature*

City and state: _____ Los Angeles, California _____

The Honorable Karen Stevenson
*Printed name and title*

*AUSA:* Laura A. Alexander (x1019)

## AFFIDAVIT

I, Ryan Bessey, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Sai Keung Tin, also known as "SK Tin," "Ricky Tin," "Ji Yearlong," and "Lam Yuk Ki" ("TIN") for a violation of 18 U.S.C. §§ 554, 2(b) (causing the smuggling goods from the United States) (the "Subject Offense").

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of the investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only and all dates and times are approximate.

### II. BACKGROUND OF AFFIANT

3. I am a Special Agent with the United States Fish and Wildlife Service ("USFWS"), Office of Law Enforcement, Department of the Interior. I am currently assigned as a Special Agent in Buffalo, New York, where I investigate violations of federal wildlife laws. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure. I have been a Special

1

Agent of USFWS since July 2010; prior to becoming a Special
Agent, I worked as a uniformed Wildlife Inspector with USFWS for
four years, covering John F. Kennedy International Airport ("JFK
Airport").  I hold a dual bachelor's degree from Mercyhurst
University in Criminal Justice and Sociology with a
concentration in law enforcement.  I am a graduate of the
Criminal Investigator Training Program, USFWS Special Agent
Basic School, and Wildlife Inspector Basic School at the Federal
Law Enforcement Training Center in Glynco, Georgia.

4.  I have received specialized training and possess
experience in the enforcement of federal wildlife laws,
including Smuggling and the Lacey Act, Title 16, United States
Code, Section 3371 et seq., which criminalizes selling or
transporting wildlife in international commerce.  I am further
trained in the identification of fish and wildlife species,
including eastern box turtles.  I have participated in numerous
federal investigations, either as a case agent or in various
support roles, including investigations involving the unlawful
capturing, taking, transporting, possession, and sale of fish
and wildlife.

### III. SUMMARY OF PROBABLE CAUSE

5.  Between June 2017 and December 2018, Kang Juntao
("Kang") smuggled at least 1,500 turtles from the United States
to Hong Kong.  Kang pleaded guilty to a federal money laundering
charge related to this conduct in Camden, New Jersey, following
his extradition from Malaysia in 2019.

USCA2 9

6.    From approximately August 2017 through November 2018, Kang directed middlemen to ship approximately 46 packages containing turtles from cities and neighborhoods in New York and New Jersey, which were routed through an International Mail Facility located at JFK Airport in Queens, New York, to TIN and aliases associated with TIN at Room 705, No-7, San Lau Street, Cheong Shing Court, Hung Hom, Hong Kong (the "Target Address") and other addresses in Hong Kong that were used to receive smuggled turtle parcels in TIN's name and the names of aliases associated with TIN.

7.    On June 27, 2023, wildlife inspectors at the International Mail Facility in Torrance, California, intercepted four packages addressed to "Ji Yearlong," an alias believed to be associated with TIN, at TIN's home address, the Target Address.  Each of these packages contained eastern box turtles, which are regulated by the Convention on International Trade in Endangered Species of Wild Flora and Fauna ("CITES"), and each package was falsely labeled as containing almonds or chocolate cookies.  Wildlife inspectors also searched property records and learned that the name listed as the sender on each of these packages was not in fact associated with the listed sender address and was thus likely fictitious.

8.    On February 25, 2024, TIN admitted to me in a voluntary, recorded interview that he lives at the Target Address with his wife.  I also manually searched TIN's two cell phones, one of which revealed a conversation wherein two individuals discussed the risk of law enforcement intercepting

3

parcels containing turtles.  Further, the phone number associated with one of TIN's two phones that I reviewed is the same phone number listed on packages of turtles sent from cities and neighborhoods in New York and New Jersey to the Target Address in 2018.

9.    Based on the above, and as described in further detail below, there is probable cause to believe that TIN committed the Subject Offense, i.e., on or about June 27, 2023, within the Central District of California and elsewhere, TIN, together with others, knowingly caused to be exported and sent from the United States to Hong Kong, merchandise, namely, eastern box turtles, contrary to U.S. law, in that he did not obtain CITES permits, did not possess an import/export license, and did not declare the merchandise to an official of the United States government upon the shipment of the turtles from the United States, in violation of 18 U.S.C. §§ 554, 2(b), 16 U.S.C. §§703 and 1538; and 50, C.F.R. §§ 14, 21, and 23.

## VI.  <u>LEGAL BACKGROUND</u>

10.  CITES was an international agreement among approximately 181 governments, including the United States, the People's Republic of China, and the Hong Kong Administrative District, to protect fish, wildlife, and plants that are, or may become, threatened with extinction.  CITES established import and export restrictions to protect these species from overexploitation through international trade.  The restrictions applied to live or dead wildlife specimens, as well as the

4

skins, parts, and products made in whole or in part from a listed species.

11.  Under CITES, species were protected according to a classification system known as "Appendices I, II, and III." Appendix I consisted of species threatened with extinction which were or may have been affected by trade.  Appendix II of CITES consisted of the species that were not presently threatened with extinction but could have become threatened if trade in the species was not regulated.  International trade in species listed in these appendices was monitored and regulated by permits and quotas.

12.  The United States implemented CITES through the Endangered Species Act ("ESA"), Title 16, United States Code, Section 1531 et seq.  The ESA and its implementing regulations made it unlawful for anyone to engage in trade in any specimens contrary to CITES or to possess any specimens traded contrary to CITES.  16 U.S.C. § 1538(c)(1).

13.  Prior to export from the United States, all shipments of CITES Appendix II wildlife were required to have a valid CITES export or re-export permit issued by the United States CITES Management Authority.  50 C.F.R. § 23.20.  International trade in a CITES-listed specimen without the required documentation was prohibited.  50 C.F.R § 23.13(a).

14.  Under Title 50 of the Code of Federal Regulations, exporters and their agents were required to declare any importation of wildlife from the United States on a Declaration for Importation or Exportation of Wildlife.  50 C.F.R. § 14.61.

5

Exporters and their agents were further required to obtain clearance from an officer of the U.S. Fish and Wildlife Service ("USFWS") for any exportation of wildlife and to make all relevant shipping documents, permits, and the wildlife itself available to an officer of the USFWS.  50 C.F.R. § 14.52. Exporters and their agents were further required to mark any exportation of wildlife with an accurate list of each species' scientific name.  50 C.F.R. § 14.81.

## VII. <u>STATEMENT OF PROBABLE CAUSE</u>

15.  Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

### A.  Eastern Box Turtles Are Regulated by CITES

16.  The eastern box turtle (*Terrapene carolina carolina*) is a subspecies of the common box turtle (*Terrapene carolina*). The eastern box turtle is native to forested regions of the eastern United States with some isolated populations in the Midwest. The turtles typically reach a length up to six inches and can live more than 100 years. The turtles have a domed carapace, which can display radiated lines or spots. Turtles with colorful markings are particularly prized in the domestic and foreign pet trade market, particularly in China and Hong Kong.

17.  All turtles in the genus Terrapene, which includes the eastern box turtle has been listed in Appendix II of CITES since February 16, 1995.

6

**B.    Between June 2017 and December 2018, TIN Received Shipments of Eastern Box Turtles at His Hong Kong Address**

18.    In 2017, the U.S. Fish and Wildlife Service conducted an investigation into Kang, a Chinese citizen located in Hangzhou City, China.  Kang recruited turtle poachers and suppliers in the United States to ship turtles domestically to middlemen.  Those middlemen would in turn bundle the turtles into other packages and export them to Hong Kong.  The turtles were bound in socks to protect their shells and so they could not move and alert authorities.  Between June 2017 and December 2018, Kang smuggled at least 1,500 turtles from the United States to Hong Kong with a market value of over $2,250,000 in the illegal pet trade.  Kang pleaded guilty to a federal money laundering charge in Camden, New Jersey, in Case No. 1:10-CR-00107-RMB, following his extradition from Malaysia in 2019.

19.    Kang instructed middlemen to ship turtles to Hong Kong, where it was easier to smuggle turtles into mainland China.  Kang instructed shippers to ship the turtles to the Target Address.  Kang also instructed shippers to address these packages to the following recipients: Sai Keung Tin, SK Tin, Ricky Tin, Ji Yearlong, and Lam Yuk Ki.[1]  From approximately August 2017 through November 2018, Kang directed middlemen to ship approximately 46 packages containing turtles from cities

---

[1] Based on my training and experience, and TIN's admission to me today, February 25, 2024, that no adults other than him and his wife live as his home, the Target Address, I believe "Ji Yearlong and "Lam Yuk Ki" are TIN's aliases that he uses on parcels containing illegal wildlife shipments for the purpose of avoiding law enforcement.

USCA2 14

and neighborhoods in New York and New Jersey, which were routed through an International Mail Facility located at JFK Airport in Queens, New York, to the above-referenced recipients at the Target Address or other addresses in Hong Kong that were used to receive smuggled turtle parcels in TIN's name.

20. Since Kang's arrest and prosecution, wildlife inspectors at the International Mail Facility in Torrance, California, have continued to intercept packages addressed to TIN and others at the Target Address. For example, on June 27, 2023, wildlife inspectors at the International Mail Facility in Torrance, California, intercepted four packages addressed to Ji Yearlong at the Target Address. Three of these packages contained between eight and 12 live eastern box turtles each. The fourth package contained seven live eastern box turtles and one deceased eastern box turtle. The turtles were all bound in socks. The packages were falsely labeled as containing almonds or chocolate cookies. Wildlife inspectors also searched property records and learned that the name listed as the sender on each of these packages was not in fact associated with the listed sender address, and thus fictitious.

//

//

//

21.   Images of one of these four packages intercepted on June 27, 2023, that was addressed to TIN's home, the Target Address, are depicted below:





22.   A review of postal records from June 2021 to June 2023 indicated that approximately 45 other packages were shipped from cities and neighborhoods in the Central District of California and routed to the Target Address via the International Mail Facility located in Torrance, California.  Based on my review of property records related to the sender addresses associated with these packages, none of the sender names listed on the packages appear to be associated with their respective sender addresses.

9

The sender names thus appear to be fictitious. Based on my training and experience, individuals who illegally export wildlife often use fictitious sender names on shipments containing wildlife to avoid detection by law enforcement. About 30 of the 45 packages described above listed TIN or one of his aliases as the recipient. The remaining packages listed Ji Yearlong, Lam Yuk Ki, or Yan Ji as recipients.

23. USFWS searched for any CITES permits, import/export licenses in the shippers' names, and wildlife declarations and found none that correspond to any of the shipments sent to the Target Address, including those listing the recipient as TIN.

### C. TIN Arrives at John F. Kennedy International Airport in Queens, New York on February 25, 2024

24. On February 25, 2024, TIN arrived at JFK Airport in Queens, New York, from Hong Kong. USFWS agents received an alert that TIN was traveling to the United States. TIN entered the customs area of the JFK airport after arriving, and Customs and Border Protection ("CBP") agents then directed TIN to a secondary screening. TIN agreed to speak with me and provided me with the passcodes for his two cell phones ("Phone #1" and "Phone #2"). My encounter with TIN was audio recorded. TIN told me that Phone #1, with number 6228-6128, was his personal phone that he has used for many years. The phone number for Phone #1 is the same phone number listed on packages exported from cities and neighborhoods in New York and New Jersey to the Target Address in 2018. I reviewed the contents of Phone #1 and learned that TIN, using Phone #1, had a conversation with an

USCA2 17

individual whose saved profile picture was a diamondback terrapin hatchling, another turtle species frequently trafficked from the United States to Hong Kong. Based on my training and experience, illegal turtle trade suppliers frequently attach turtle profile pictures to their social media accounts.

25. I also reviewed the contents of Phone #2. The call log on Phone #2 showed that a call was placed from Phone #2 to Phone #1 on February 24, 2024. This call log also showed incoming calls on February 24, 2024, from a phone number which appear to have originated from Hong Kong. Phone #2 also had hundreds of photographs of turtles, most of which were eastern box turtles. These photographs were saved under a Google account associated with email address RickyMartinMartin19@gmail.com.

26. Phone #2 also contained a screenshot of a conversation between two individuals where the two individuals appear to be discussing the risk of law enforcement seizing international turtle shipments, and how a refund would be given to the buyer if the turtle shipment was seized by law enforcement or if any of the turtles died during the shipment process. One of the participants of this conversation was identified as Emagnuk Citoxe. I reviewed Citoxe's Facebook profile, which was linked to the above-referenced conversation and discovered that Citoxe has at least 30 Facebook "friends," with connections to turtles and other reptiles. Further, while TIN was in the customs area at JFK Airport, Phone #2 had an incoming call from area code 530 in northeastern California.

USCA2 18

27. During my recorded interview of TIN, TIN stated that he also goes by Ricky Tin. He admitted that he lives at the Target Address with his wife and no other adults. He stated he created the Gmail account RickyMartinMartin19@gmail.com a few days ago, before traveling to the United States on February 25, 2024. TIN also stated that he bought Phone #2 from a secondhand market in Hong Kong approximately one week before his arrival in the United States and did not know what was on it or its phone number. TIN also said that he did not know anyone in New York or California and planned to travel to Los Angeles or Texas after spending two days in New York City.

## VIII. CONCLUSION

28. For all of the reasons described above, there is probable cause to believe that TIN committed the Subject Offense.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 25th day of February, 2024.

*Karen Stevenson*
_____
THE HONORABLE KAREN STEVENSON
UNITED STATES MAGISTRATE JUDGE

USCA2 19

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>SAI KEUNG TIN,<br>also known as "SK Tin,"<br>also known as "Ricky Tin,"<br>also known as "Ji Yearlong,"<br>also known as "Lam Yuk Ki,"<br><br>DEFENDANT | **WARRANT FOR ARREST**<br><br><br>ON COMPLAINT<br><br>CASE NO.: _____ |

To:    UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest **SAI KEUNG TIN, also known as "SK Tin," also known as "Ricky Tin," also known as "Ji Yearlong," also known as "Lam Yuk Ki,"** and bring him/her forthwith to the nearest Magistrate Judge to answer a complaint charging him/her with Causing the Smuggling of Goods From the United States, in violation of Title 18, United States Code, Section 554.

REC: BY AUSA            [Detention]

February 25, 2024
2/25/2023 9:18 pm
_____
Date

Hon. Karen L> Stevenson
_____
The Honorable Karen Stevenson

*Karen Stevenson*
_____
Signature of Magistrate Judge

| **RETURN** | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at (location): | | |
| DATE RECEIVED<br><br>DATE OF ARREST | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |

**DESCRIPTIVE INFORMATION FOR DEFENDANT CONTAINED ON PAGE TWO**

# ADDITIONAL DEFENDANT INFORMATION

| RACE: | SEX: | HEIGHT: | WEIGHT: | HAIR: | EYES: | OTHER: |
|---|---|---|---|---|---|---|

| DATE OF BIRTH: ███ | PLACE OF BIRTH: | SOCIAL SECURITY NO.: | DRIVER'S LICENSE NO. | ISSUING STATE |
|---|---|---|---|---|

| ALIASES: | SCARS, TATTOOS OR OTHER DISTINGUISHING MARKS: |
|---|---|

| AUTO YEAR: | AUTO MAKE: | AUTO MODEL: | AUTO COLOR: | AUTO LICENSE NO.: | ISSUING STATE |
|---|---|---|---|---|---|

| LAST KNOWN RESIDENCE: | LAST KNOWN EMPLOYMENT: |
|---|---|

**FBI NUMBER:**

**ADDITIONAL INFORMATION:**

| INVESTIGATIVE AGENCY NAME: | INVESTIGATIVE AGENCY ADDRESS: |
|---|---|

**NOTES:**

USCA2 22



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NEM:LDS/DJM
271 Cadman Plaza East
Brooklyn, New York 11201

February 26, 2024

By Email and ECF

The Honorable Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:    United States v. Sai Keung Tin, a/k/a "Ricky Tin"
            Magistrate Docket No. 24-171

Dear Judge Pollak:

       The government respectfully submits this letter in support of its motion for a permanent order of detention for defendant Sai Keung Tin, also known as "Ricky Tin" (the "defendant" or "Tin"), who presents a serious risk of flight. See 18 U.S.C. § 3142(f)(2). Tin is a citizen of the People's Republic of China. On February 25, 2024, Tin was charged by complaint in the Central District of California with a violation of Smuggling Goods from the United States (18 U.S.C. § 554) for his role in a wildlife trafficking ring.

       Tin was arrested yesterday after arriving at John F. Kennedy International Airport ("JFK Airport") and will make his first appearance this afternoon before Your Honor. Given that Tin is a Chinese citizen, lacks any personal and family ties in the United States, his use of multiple phones, his business connections to a wildlife smuggling ring overseas, the strength of the government's case, and the serious penalties he faces if convicted, there is no condition or combination of conditions that can reasonably secure his appearance in Court. He should therefore be detained.

I.      Background

       Tin is a citizen of the People's Republic of China who resides at Room 705, No-7, San Lau Street, Cheong Shing Court, Hung Hom, Hong Kong (the "Target Address"). Tin was identified as the target of a U.S. Fish and Wildlife Service ("USFWS") investigation because his address was used to illegally ship a high volume of packages containing CITES -protected turtles.[1]

---

      [1]    The Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES") is an international treaty to which the United States, China, and approximately

In 2017, USFWS conducted an investigation into Kang Juntao, a Chinese citizen located in Hangzhou City, China, who recruited turtle poachers and suppliers in the United States to ship turtles domestically to middlemen. The middlemen bundled the turtles into other packages and exported them to Hong Kong. The turtles were bound in socks to protect their shells and to ensure they could not move and alert authorities. Between June 2017 and December 2018, Kang smuggled at least 1,500 turtles from the United States with a market value of over $2.25 million in the illegal pet trade. Following his extradition from Malaysia in 2019, Kang pleaded guilty to a federal money laundering charge in the District of New Jersey.

As relevant here, Kang instructed the middlemen to ship the packages to the Target Address in Hong Kong, where it was easier to smuggle the turtles into mainland China. The packages were addressed to Sai Keung Tin, SK Tin, Ricky Tin, or "Ji Yearlong" and "Lam Yuk Ki," names believed to have been used by Tin as aliases to evade law enforcement detection of the packages. In 2017, approximately 27 packages containing turtles were smuggled through the international mail facility ("IMF") at JFK Airport to the Target Address. And in 2018, approximately 46 shipments containing turtles were smuggled through the JFK Airport IMF to the Target Address.

Since Kang's arrest and prosecution, packages have continued to be sent to the Target Address. For example, on June 27, 2023, wildlife inspectors at the IMF in Torrance, California, intercepted four packages addressed to Ji Yearlong at the Target Address. The first three packages contained 12, eight, and 12 live eastern box turtles, respectively. The fourth package contained seven live and one deceased eastern box turtles. The turtles were all bound in socks and the packages were falsely labeled as containing almonds or chocolate cookies. A search of property records also indicated that the names listed as the sender from the origin address were fictitious.

A review of postal records from June 2021 to June 2023 indicated that approximately 45 other packages were shipped to the Target Address through the IMF in Torrance. About 30 of those packages listed the defendant as the recipient, as Sai Keung Tin, SK Tin, or Ricky Tin. The other recipient names included Ji Yearlong, Lam Yuk Ki, or Yan Ji.

In addition to the smuggling count charged in the complaint, Tin is being investigated for additional felony charges related to his wildlife trafficking, such as Lacey Act trafficking and false labeling provisions (16 U.S.C. §§ 3372, 3373). Though the Government is not aware of any criminal history at this time, Tin still faces a substantial, multi-year sentence, if convicted. Given the significant value of the wildlife trafficked, valued at almost a million dollars when accounting for his relevant conduct going back to at least 2017, Tin's sentencing guidelines offense level, and the amount of time he could serve if given a sentence within the guidelines, could be at least 41-51 months' imprisonment.

Tin continues to reside in the People's Republic of China, a country with which the United States does not have an extradition treaty. When interviewed by USFWS agents upon his

---

181 nations are signatories and governs the trade of species which are or may become extinct if their trade is not regulated.

USCA2 24

arrival at JFK Airport on February 25, 2024, he admitted that the Target Address is his current residence, and that he and his wife are the only people who live there. Tin stated that the purpose of his travel to the United States was for tourism. When asked what his plans were while in the country, he stated that he planned to spend two days in New York City and then travel to Texas or California. However, Tin did not have any flight or hotel reservations for either destination. He further told agents that he has no friends or family in the United States.

Tin also had two cell phones in his possession when entering the country at JFK Airport. He claimed he did not know the phone number for one of the phones, having just bought it from a Hong Kong secondhand market. Yet his wife and a caller with a California area code dialed that phone number while he was detained at customs.

II.    Legal Standard

    A.    The Bail Reform Act

    The Bail Reform Act of 1984, codified at 18 U.S.C. §§ 3141–3156, provides that, in general, a court "shall order" a defendant's pretrial release unless the court determines that the defendant presents an unreasonable risk of flight or "will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). The government must ultimately persuade the court by a preponderance of the evidence that the defendant is a flight risk or by clear and convincing evidence that the defendant is a danger to the community. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).

    Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release and (4) the weight of the evidence against the defendant. See 18 U.S.C. § 3142(g).

    Where the evidence of guilt is strong, it provides "a considerable incentive to flee." United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased").

    B.    Proceeding by Proffer

    Evidentiary rules do not apply at detention hearings and the Government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffer. LaFontaine, 210 F.3d at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted).

III.     <u>The Defendant Should Be Detained Pending Trial</u>

        Tin should be detained pending trial because he poses an irremediable risk of flight. He does not have any personal or family ties to the United States and has no residence here. On the contrary, Tin is a Chinese citizen who maintains a Chinese passport and who resides in China. He therefore could not be extradited to the U.S. if he were able to return. Tin thus has the means and motive to disappear and escape answering for his crimes. The use of fictitious names is common among wildlife traffickers, and Tin has previously communicated with others about methods used to evade customs and law enforcement detection when engaging in smuggling activity. As mentioned above, he also uses multiple mobile phones, one of which contained indicia of illegal wildlife activity, including hundreds of photographs of turtles. When asked about the pictures of turtles observed on this phone, Tin implausibly explained that he had purchased the phone last week and did not know what was on it, nor did he know the phone number. However, the pictures were saved under a Google account associated with the email address "RickyMartinMartin19@gmail.com," which Tin told law enforcement officers he created a few days prior to traveling to the United States.

        Moreover, since his wife resides in China, Tin has every incentive to return to her and avoid punishment. <u>See</u> <u>United States v. Liebowitz</u>, 669 F. A'ppx 603, 605 (2d Cir. 2016) ("the lengthy jail sentence that could be imposed for the charged crimes provides an incentive to flee [and] the likelihood of flight is reinforced in this case by that fact that Liebowitz holds Australian as well as United States citizenship and has family members in Australia"); <u>United States v. Baig</u>, 536 F. App'x 91, 93 (2d Cir. 2013) (affirming detention order in part because the defendant "though a permanent resident of the United States, is a citizen of Pakistan and maintains ties there"); <u>Mercedes</u>, 254 F.3d at 438 (ordering pretrial detention and reversing the district court's grant of release where the defendant was a legal permanent resident of the United States (not a citizen), faced a substantial sentence, and evidence linked him to a violent robbery); <u>United States v. El-Hage</u>, 213 F.3d 74, 80 (2d Cir. 2000) (noting that a defendant's "history of travel and residence in other countries" is a factor that has been long-approved by the Second Circuit in determining whether a defendant should be detained).

        Tin's incentive to flee is particularly acute given the substantial sentence he could face if convicted. The high value of the wildlife trafficked over the course of Tin's participation in the smuggling ring exposes him to a significant sentence under the guidelines of at least 41-51 months' imprisonment. <u>See United States v. Blanco</u>, 570 F. App'x 76, 77 (2d Cir. 2014) (affirming district court's order of detention where defendants face lengthy term of imprisonment). In addition, the evidence against Tin is strong, given the discovery of evidence of turtle trafficking on his phone and the volume of packages shipped to his residence over the course of many years. <u>See</u> <u>United States v. Millan</u>, 4 F.3d 1038, 1046 (2d Cir. 1993) (holding that, where the evidence of guilt is strong, it provides "a considerable additional incentive to flee").

        In light of the fact that Tin is a Chinese citizen, lacks any personal and family ties in the United States, has business connections to a wildlife smuggling ring overseas, the strength of the government's case, and the serious penalties he faces if convicted, Tin presents a risk of flight that no combination of conditions can mitigate.

4

IV.     Conclusion

        For the reasons set forth above, the Government respectfully submits that no condition or combination of conditions will assure Tin's return to court.  He should be detained pending his removal to the Central District of California.

                                Respectfully submitted,

                                BREON PEACE
                                United States Attorney

               By:     /s/ Daniel J. Marcus
                                Daniel J. Marcus
                                Assistant U.S. Attorney
                                (718) 254-6280

cc:     Clerk of Court (CLP) (by ECF)
        Defense Counsel (by email)

USCA2 27

```
MIME-Version:1.0
From:ecf_bounces@nyed.uscourts.gov
To:nobody@nyed.uscourts.gov
Bcc:
--Case Participants:
--Non Case Participants:
--No Notice Sent:

Message-Id:18711543@nyed.uscourts.gov
Subject:Activity in Case 1:24-mj-00171-CLP USA v. Tin Initial Appearance - Rule 5(c)(3)
Content-Type: text/html
```

## U.S. District Court

### Eastern District of New York

**Notice of Electronic Filing**

The following transaction was entered on 2/26/2024 at 2:53 PM EST and filed on 2/26/2024

| | |
|---|---|
| **Case Name:** | USA v. Tin |
| **Case Number:** | 1:24–mj–00171–CLP |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Minute Entry for proceedings held before Magistrate Judge Cheryl L. Pollak : Initial Appearance in Rule 5(c)(3) Proceedings as to Sai Keung Tin held on 2/26/2024, Attorney Appointment of federal defender Mia Eisner Grynberg for the defendant present. AUSA Daniel Marcus. Cantonese int. Way Moy present.(FTR Log #2;27–2;40.) Defense counsel request for ROR release with conditions. Gov't opposed bail for reasons stated on the record. Court denied bail. Commitment to Central District of California entered. Defendant waived identity hearing. (SY)**

**1:24–mj–00171–CLP–1 Notice has been electronically mailed to:**

**1:24–mj–00171–CLP–1 Notice will not be electronically mailed to:**

Daniel J. Marcus
DOJ–USAO
Eastern District of New York
271–A Cadman Plaza East
Brooklyn, NY 11201

Mia Eisner–Grynberg
Federal Defenders of New York
One Pierrepont Plaza
16th Floor
Brooklyn, NY 11201

# UNITED STATES DISTRICT COURT

EASTERN ——————— District of ——————— NEW YORK

| UNITED STATES OF AMERICA | COMMITMENT TO ANOTHER |
| V. | DISTRICT |
| Sai Keung Tin | |

| DOCKET NUMBER | | MAGISTRATE JUDGE CASE NUMBER | |
|---|---|---|---|
| District of Arrest | District of Offense | District of Arrest | District of Offense |
| | | 24 MJ 171 | |

**CHARGES AGAINST THE DEFENDANT ARE BASED UPON AN**

☐ Indictment  ☐ Information  ☑ Complaint  ☐ Other (specify)

charging a violation of    18   U.S.C. §   554

**DISTRICT OF OFFENSE**

**DESCRIPTION OF CHARGES:**

Smuggling of goods from the U.S.

**CURRENT BOND STATUS:**

☐ Bail fixed at                    and conditions were not met
☑ Government moved for detention and defendant detained after hearing in District of Arrest
☐ Government moved for detention and defendant detained pending detention hearing in District of Offense
☐ Other (specify)

| **Representation:** | ☐ Retained Own Counsel | ☑ Federal Defender Organization | ☐ CJA Attorney | ☐ None |

| **Interpreter Required?** | ☐ No | ☑ Yes | Language:   Cantonese |

**DISTRICT OF** NEW YORK

## TO: THE UNITED STATES MARSHAL

You are hereby commanded to take custody of the above named defendant and to transport that defendant with a certified copy of this commitment forthwith to the district of offense as specified above and there deliver the defendant to the United States Marshal for that District or to some other officer authorized to receive the defendant.

2/26/24
Date

_____
United States Judge or Magistrate Judge

## RETURN

This commitment was received and executed as follows:

| DATE COMMITMENT ORDER RECEIVED | PLACE OF COMMITMENT | DATE DEFENDANT COMMITTED |
|---|---|---|
| | | |

| DATE | UNITED STATES MARSHAL | (BY) DEPUTY MARSHAL |
|---|---|---|
| | | |

AO 466A (Rev. 12/17) Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No.  24 MJ 171 |
| SAI KEUNG TIN, | ) | |
| | ) | Charging District's Case No. |
| _____ | ) | |
| *Defendant* | ) | |

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

Central District of California

I understand that I have been charged in another district, the *(name of other court)*

I have been informed of the charges and of my rights to:

(1)    retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)    an identity hearing to determine whether I am the person named in the charges;

(3)    production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)    a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.

(5)    a hearing on any motion by the government for detention;

(6)    request a transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☑    an identity hearing and production of the warrant.

☐    a preliminary hearing.

☐    a detention hearing.

☐    an identity hearing, production of the judgment, warrant, and warrant application, and any preliminary or detention hearing to which I may be entitled in this district. I request that my
☐ preliminary hearing and/or ☐ detention hearing be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date:   2/26/2024

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Mia Eisner Grynberg
_____
*Printed name of defendant's attorney*

U.S.M.J.

USCA2 30

CJA-23
(Rev 3/21)

# FINANCIAL AFFIDAVIT
### IN SUPPORT OF REQUEST FOR ATTORNEY, EXPERT, OR OTHER SERVICES WITHOUT PAYMENT OF FEE

IN THE UNITED STATES ☑ DISTRICT COURT ☐ COURT OF APPEALS ☐ OTHER *(Specify Below)*

IN THE CASE OF

| | | FOR | LOCATION NUMBER |
|---|---|---|---|
| UNITED STATES | v. Sai Keung Tin | AT | |

PERSON REPRESENTED *(Show your full name)*

SAI KEUNG TIN

1 ☑ Defendant - Adult
2 ☐ Defendant - Juvenile
3 ☐ Appellant
4 ☐ Probation Violator
5 ☐ Supervised Release Violator
6 ☐ Habeas Petitioner
7 ☐ 2255 Petitioner
8 ☐ Material Witness
9 ☐ Other *(Specify)* _____

DOCKET NUMBERS
Magistrate Judge

District Court
1:24 M 171 - 01

Court of Appeals

CHARGE/OFFENSE *(Describe if applicable & check box→)* ☑ Felony ☐ Misdemeanor

18 U.S.C. 554 - SMUGGLING

## ANSWERS TO QUESTIONS REGARDING ABILITY TO PAY

*appd CLP* (handwritten note, left margin)

| INCOME & ASSETS | EMPLOYMENT | Do you have a job? ☑ Yes ☐ No |
|---|---|---|
| | | IF YES, how much do you earn per month? 4000 USD |
| | | Will you still have a job after this arrest? ☐ Yes ☐ No ☑ Unknown |

Do you own any of the following, and if so, what is it worth?

| PROPERTY | | APPROXIMATE VALUE | DESCRIPTION & AMOUNT OWED |
|---|---|---|---|
| | Home | $ | |
| | Car/Truck/Vehicle | $ | |
| | Boat | $ NONE | |
| | Stocks/bonds | $ | |
| | Other property | $ | |

CASH & BANK ACCOUNTS

Do you have any cash, or money in savings or checking accounts? ☐ Yes ☑ No

IF YES, give the total approximate amount after monthly expenses $ $0

OBLIGATIONS, EXPENSES, & DEBTS

How many people do you financially support? 2

| BILLS & DEBTS | MONTHLY EXPENSE | TOTAL DEBT |
|---|---|---|
| Housing | $ | $ |
| Groceries | $ | $ |
| Medical expenses | $ | $ |
| Utilities | $ 2500 USD | $ |
| Credit cards | $ | $ |
| Car/Truck/Vehicle | $ | $ |
| Childcare | $ | $ |
| Child support | $ | $ |
| Insurance | $ 50 000 USD debts | $ |
| Loans | $ | $ |
| Fines | $ | $ |
| Other | $ | $ |

I certify under penalty of perjury that the foregoing is true and correct.

_____
SIGNATURE OF DEFENDANT
(OR PERSON SEEKING REPRESENTATION)

2/26/2024
Date